## IN THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| BREANNA MELLENTINE and MEGAN CANTY | ) )  ) |
| Plaintiffs, | ) |
| v. | ) ) |
| KEDPLASMA LLC (d/b/a KEDPLASMA USA) and Kedrion Biopharma, Inc. | ) ) ) ) |
| | ) JURY TRIAL DEMANDED |
| Defendants. | ) ) |

## COMPLAINT

Plaintiffs Breanna Mellentine and Megan Canty, by their counsel Equip for Equality, bring this action against KEDPLASMA LLC d/b/a KEDPLASMA USA ("KEDPLASMA") and Kedrion Biopharma, Inc. ("Kedrion") (collectively "Defendant").

## STATEMENT OF THE CASE

1. This action concerns Defendants' discrimination against Plaintiffs Breanna Mellentine and Megan Canty under the Title III of the Americans with Disabilities Act (ADA) and the Illinois Human Rights Act (IDHR).

2. Plaintiffs Mellentine and Canty are both persons with a disability of bipolar disorder who were blocked by Defendant from donating plasma solely due to their disability.

3. Defendant KEDPLASMA operates collection centers where people can provide plasma as often as twice a week in exchange for monetary compensation. Many people rely on providing plasma to collection centers as a source of income.

4. Plaintiffs Mellentine and Canty went to KEDPLASMA's Springfield, Illinois collection center on November 30, 2022, and January 23, 2023, respectively. Both completed KEDPLASMA's intensive intake process but were prohibited from providing plasma.

1

5. Plaintiffs were denied the opportunity to provide plasma due to KEDPLASMA's policy requiring persons with bipolar disorder to submit a three-page doctor-signed approval form before being permitted to provide plasma.

6. KEDPLASMA did not deny Plaintiffs the opportunity to provide plasma because they were in poor health, because their plasma posed a safety risk to the blood supply, or because of any behavior exhibited by either Plaintiff. Plaintiffs were denied the opportunity to donate on the basis of their disability, record of disability, and/or perceived disability. This action seeks to remedy this discrimination and the resulting harm to Plaintiffs.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, because Plaintiffs' federal civil rights claims arise under Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12182.

8. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiffs' state law claims arise from a common set of operative facts and are so related to the claims in the action within the original jurisdiction of the Court that they form part of the same case or controversy. This Court also has diversity jurisdiction over these claims under 28 U.S.C. § 1332 because there is complete diversity between all plaintiffs and all defendants and the amount in controversy for each plaintiff exceeds $75,000. On July 25, 2023, the IDHR issued to both Plaintiffs Notices of Right to Commence Civil Action concerning their separate Illinois Human Rights Act claims. This civil action was filed within 90 days of these Notices.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred here. Two of the three collection centers that KEDPLASMA operates in Illinois are in this district.

## PARTIES

10. Plaintiff Breanna Mellentine is a resident of Springfield, Illinois and a citizen of Illinois. Ms. Mellentine has bipolar disorder. She is a qualified individual with a disability under the ADA, 42 U.S.C. § 12102(a), and the Illinois Human Rights Act, 775 ILCS 5/1-103(I), because she has a mental impairment that substantially limits her in one or more major life activities, including (without limitation), concentrating and communicating. Furthermore, Ms. Mellentine is an individual with history or record of a disability under 42 U.S.C. § 12102(b), and the Illinois Human Rights Act, 775 ILCS 5/1-103(I), because she has received formal diagnoses of bipolar disorder over a period of several years. Ms. Mellentine is also an individual regarded as having a disability under 42 U.S.C § 12102(c), and Illinois Human Rights Act, 775 ILCS 5/1-103(I), because on the basis of Defendant's perception that she has a mental impairment, she has been subjected to an action prohibited under the ADA.

11. Plaintiff Megan Canty is a resident of Springfield, Illinois and a citizen of Illinois. Ms. Canty has bipolar disorder. She is a qualified individual with a disability under the ADA, 42 U.S.C. § 12102(a), and the Illinois Human Rights Act, 775 ILCS 5/1-103(I), because she has a mental impairment that substantially limits her in one or more major life activities, including (without limitation), concentrating and communicating. Furthermore, Ms. Canty is an individual with history or record of a disability under 42 U.S.C. § 12102(b), and the Illinois Human Rights Act, 775 ILCS 5/1-103(I), because she has received formal diagnoses of bipolar disorder over a period of several years. Ms. Canty is also an individual regarded as having a disability under 42

U.S.C § 12102(c), and Illinois Human Rights Act, 775 ILCS 5/1-103(I), because on the basis of Defendant's perception that she has a mental impairment, she has been subjected to an action prohibited under the ADA.

12. Defendant KEDPLASMA LLC (d/b/a KEDPLASMA USA) ("KEDPLASMA") is a foreign limited liability company organized and existing under the laws of Delaware and headquartered at 400 Kelby Street, 11th Floor, Suite 1200, Fort Lee, New Jersey. Its sole member is Kedrion Biopharma, Inc. KEDPLASMA is a citizen of Delaware and New Jersey. KEDPLASMA is registered with the Illinois Secretary of State and is actively engaged in business in Illinois.

13. Defendant Kedrion Biopharma, Inc. ("Kedrion") is a foreign corporation organized and existing under the laws of Delaware and headquartered at 400 Kelby Street, 11th Floor, Suite 1200, Fort Lee, New Jersey. Kedrion Biopharma is registered with the Illinois Secretary of State and is actively engaged in business in Illinois.

14. As alleged throughout this lawsuit, KEDPLASMA and Kedrion appear to operate as a single, integrated enterprise and did so during the relevant time period at issue herein.

**FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS**

KEDPLASMA's Plasma Collection Services

15. KEDPLASMA is engaged in the service of plasma collection, processing, and distribution to the public and the healthcare market, including the operation of three plasma collection centers in Illinois.

16. Defendants own and operate a stand-alone plasma collection center at 500 N. Grand Avenue W in Springfield, Sangamon County, Illinois. The facility is open to the public and

providers of plasma are paid. If they meet the health qualifications, participants can provide plasma as often as twice per week.

17. Upon information and belief, from approximately November 2022 to February 2023, KEDPLASMA's Springfield location offered a new donor special whereby new plasma providers could receive up to $120 for their first plasma collection and $100 for each subsequent plasma collection during a new participant's first month.

18. Upon information and belief, KEDPLASMA's Springfield location is now offering plasma providers approximately $70 per collection.

<u>Breanna Mellentine's Experience with Defendant KEDPLASMA</u>

19. Breanna Mellentine is a 28-year-old woman with bipolar disorder, Attention Deficit Hyperactivity Disorder (ADHD), and Post-Traumatic Stress Disorder (PTSD). Ms. Mellentine manages her conditions through therapy and the utilization of coping mechanisms.

20. On November 30, 2022, Ms. Mellentine went to KEDPLASMA's Springfield plasma collection center to provide plasma to earn money to support her family and obtain Christmas gifts for her children.

21. Ms. Mellentine began KEDPLASMA's intake process shortly after arriving. This process included watching an instructional video, filling out an extensive lifestyle questionnaire, grading her veins to identify an appropriate donation site, and testing the proteins in her blood via finger stick.

22. The instructional materials provided to Ms. Mellentine included information about various health conditions and medications that might impact a potential plasma provider's eligibility. To Ms. Mellentine's knowledge, neither her diagnoses nor the medication she takes to manage her conditions were identified as affecting her eligibility for donation.

23. Next, Defendant employee Nurse Tammy inquired about Ms. Mellentine's medical history. Ms. Mellentine disclosed her medical diagnoses including PTSD, ADHD, and bipolar disorder. Ms. Mellentine informed Nurse Tammy that her ADHD was managed with medication, Adderall, and that her PTSD and bipolar disorder were controlled with therapy and through her use of coping mechanisms. Nurse Tammy did not request any additional information about Ms. Mellentine's diagnoses or symptoms.

24. Following Ms. Mellentine's disclosure, Nurse Tammy informed Ms. Mellentine that Nurse Tammy would need to consult a doctor. Nurse Tammy then informed Ms. Mellentine that a doctor could not be reached and as a result, Ms. Mellentine's donation would not be possible at this time.

25. Nurse Tammy explained that Ms. Mellentine's plasma collection could not proceed without clearance from a doctor because Ms. Mellentine might have an "episode" while donating and risk her own safety or that of others in the facility. Nurse Tammy did not explain what she meant by "episode" or point to any specific behaviors that Ms. Mellentine was exhibiting. Ms. Mellentine stated that her diagnoses did not manifest in the way Nurse Tammy had described and that she posed no risk to herself or others in the facility.

26. Ms. Mellentine was asked to leave the facility and await further direction. Ms. Mellentine complied with this request.

27. Ms. Mellentine later received a call from Nurse Tammy, who explained that Ms. Mellentine's plasma collection would be indefinitely deferred until Ms. Mellentine provided Defendant with a three-page form completed by Ms. Mellentine's personal medical provider clearing her for plasma collection. Ms. Mellentine asked why the additional form was necessary, and Nurse Tammy stated that her medical history necessitated additional clearance.

28. Ms. Mellentine explained that obtaining medical clearance would be burdensome, as she had recently moved to Springfield and her former psychiatrist was now a two-and-a-half-hour drive away.

29. Ms. Mellentine followed up with KEDPLASMA on January 27, 2023, and spoke to another KEDPLASMA employee, a manager named Megan. Megan informed Ms. Mellentine that KEDPLASMA had no obligation to allow individuals to provide plasma, and the facility was within its rights to discriminate.

30. Ms. Mellentine then sought assistance from Equip for Equality, the governor-designated protection and advocacy agency for the state of Illinois.

31. By letter to Defendant KEDPLASMA dated March 2, 2023 (attached as Exhibit 1), Equip for Equality inquired into the medical necessity for any additional medical clearance; explained that Title III of the ADA prohibits discrimination against plasma providers with mental health disabilities; and explained that plasma donation centers are places of public accommodation under Title III. Equip for Equality reiterated that Ms. Mellentine wished to provide plasma at Defendant's center if she would be permitted to do so without unnecessary medical clearance.

32. On May 16, 2023, Ms. Mellentine filed a Charge of Discrimination with the Illinois Department of Human Rights (attached as Exhibit 2). On June 20, 2023, Ms. Mellentine filed a request to opt-out of the IDHR investigative and administrative process.

33. On July 25, 2023, the IDHR sent Ms. Mellentine a letter (attached as Exhibit 3) acknowledging receipt of the opt-out request and informing Ms. Mellentine that she had 90 days to file a civil action.

34. Ms. Mellentine continues to want to provide plasma with Defendants and she is prepared to do so as long as she is subject to the same requirements as other similarly situated plasma providers without her disability.

### Plaintiff Canty's Experience with Defendant KEDPLASMA

35. Plaintiff Megan Canty is a 48-year-old woman with bipolar disorder. Ms. Canty manages her condition through medication and therapy.

36. Ms. Canty went to KEDPLASMA on January 23, 2023, intending to use the money from providing plasma to purchase presents for her son's upcoming birthday.

37. Ms. Canty began KEDPLASMA's intake process. Ms. Canty reviewed the informational materials provided, including a list of conditions and medications that might impact a potential plasma provider's eligibility. To her knowledge, none of her conditions or medications were listed.

38. KEDPLASMA employee Nurse Tammy informed Ms. Canty that because she has bipolar disorder, KEDPLASMA would not permit her to provide plasma unless she provided KEDPLASMA with a three-page form signed by her primary care doctor clearing her to provide plasma. Nurse Tammy did not name a medical or safety concern that would necessitate this additional documentation.

39. Ms. Canty has previously provided plasma at plasma collection centers operated by other companies. Besides KEDPLASMA, no other plasma collection center has required Ms. Canty to provide additional medical documentation.

40. Obtaining additional medical documentation would be burdensome for Ms. Canty, as she often has to wait months to schedule an appointment with her doctor and has limited access to transportation.

41. Ms. Canty sought assistance from Equip for Equality, the governor-designated protection and advocacy agency for the state of Illinois.

42. By letter to Defendant KEDPLASMA dated May 3, 2023 (attached as Exhibit 4), Equip for Equality inquired into the medical necessity for any additional medical clearance; explained that Title III of the ADA prohibits discrimination against plasma providers with mental health disabilities; and explained that plasma collection centers are places of public accommodation under Title III. Equip for Equality reiterated that Ms. Canty wished to provide plasma at Defendant's center if she would be permitted to do so without additional and unwarranted medical clearance.

43. On May 16, 2023, Ms. Canty filed a Charge of Discrimination with the Illinois Department of Human Rights (attached as Exhibit 5). On June 20, 2023, Ms. Canty filed a request to opt-out of the IDHR investigative and administrative process.

44. On July 25, 2023, the Illinois Department of Human Rights sent Ms. Canty a letter (attached as Exhibit 6) acknowledging receipt of the opt-out request and informing Ms. Canty that she had 90 days to file a civil action.

45. Ms. Canty continues to want to provide plasma with Defendants and she is prepared to do so as long as she is subject to the same requirements as other similarly situated plasma providers without her disability.

## COUNT ONE
## TITLE III OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C § 12132)

46. The allegations contained in the preceding paragraphs are incorporated by reference.

47. Title III of the ADA provides that it is discrimination to:

9

   a. Subject an "individual or a class of individuals on the basis of a disability" to "a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity," 42 U.S.C. § 12182(b)(1)(A)(i);

   b. Apply "standards or criteria or methods of administration" that "have the effect of discriminating on the basis of disability," 42 U.S.C. § 12182(b)(1)(D);

   c. Impose or apply "eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered" 42 U.S.C. § 12182(b)(2)(A)(i).

48. By prohibiting Plaintiffs from providing plasma on the basis of their disability until they fulfill additional criteria to which participants without their disability are not subject, Defendants have subjected Plaintiffs to a denial of the full and equal enjoyment of Defendants' facilities, goods and services, which is discrimination under Title III of the ADA, 42 U.S.C. §§ 12182(b)(1)(A)(i-iv), 12182(b)(1)(D), and 12182(b)(2)(A)(i-v).

49. Plaintiffs want to provide plasma and earn money at Defendants' collection center in Springfield now and in the future, but Defendants have not permitted them to do so because Defendants:

   a. Operates their public accommodation and service establishment so as to deny persons with bipolar disorder the opportunity to participate in or benefit from its services in a manner equivalent to persons without this disability, 42 U.S.C. § 12182(b)(1)(A)(i);

   b. Uses standards or criteria or methods of administration that discriminate on the basis of disability against persons with bipolar disorder, 42 U.S.C. § 12182(b)(1)(D); and

   c. Uses eligibility criteria that tend to screen out persons with bipolar disorder by subjecting them to additional eligibility requirements, 42 U.S.C. § 12182(b)(2)(A)(i).

There is a causal relation between Defendants' continuing discrimination under the ADA and Plaintiffs' inability to use Defendants' services to provide plasma and earn money in a manner equal to persons without a disability.

50. A favorable judicial decision for Plaintiffs will prevent further discrimination and enable Plaintiffs to use Defendants' services going forward.

## COUNT TWO
## ILLINOIS HUMAN RIGHTS ACT

51. The allegations contained in the preceding paragraphs are incorporated by reference.

52. The Illinois Human Rights Act (IHRA) is intended to prevent and eliminate discriminatory practice in places of public accommodation because of an individual's actual or perceived disability. 775 ILCS 5/1-102(A).

53. The IHRA prohibits discrimination on the basis of "disability," which is defined to include "a determinable physical or mental characteristic of a person…which may result from disease, injury, congenital condition of birth or functional disorder and which characteristic…is unrelated to a person's ability to utilize and benefit from a place of public accommodation." 775 ILCS 5/1-103(I).

54. It is a civil rights violation under the IHRA "for any person on the basis of unlawful discrimination to...[d]eny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." 775 ILCS 5/5-102(A).

55. Defendants' Springfield collection center is a "place of public accommodation" within the meaning of the IHRA as it is a "service establishment." 775 ILCS 5/5-101(A)(6).

56. Plaintiffs are persons with a disability within the meaning of the IHRA. 775 ILCS 5/1-103(I).

57. In prohibiting Plaintiffs from providing plasma on the basis of their disability until they fulfill additional criteria to which participants without a disability are not subject, Defendants denied Plaintiffs the full and equal enjoyment of Defendants' facilities, goods and services.

58. Defendants' conduct has harmed Plaintiffs financially, and has caused substantial mental and emotional distress, as well as the stigmatizing injury and deprivation of personal dignity that accompanies the denial of equal access to a place of public accommodation. Defendants' conduct will continue to harm Plaintiffs until Defendants are ordered by this Court to cease discriminating against Plaintiffs on the basis of their disability and to compensate them for the damages suffered from Defendants' discriminatory actions.

## PRAYER FOR RELIEF TO ALL COUNTS

WHEREFORE, Plaintiff requests that the Court:

(a) Enter judgment in favor of Plaintiffs;

(b) Enter a declaratory judgment of Plaintiffs' rights;

(c) Award compensatory damages, or alternatively nominal damages;

(d) Award injunctive relief for any changes in policy necessary to allow plaintiffs to donate;

(e) Award pre- and post-judgment interest;

(f) Award Plaintiffs the cost of this lawsuit and reasonable attorneys' fees, costs and expenses pursuant to 42 U.S.C § 12205, including expert fees; and

(g) Award such other relief as may be just, equitable and appropriate.

**JURY DEMAND**

PLAINTIFFS REQUEST TRIAL BY JURY ON ALL ISSUES TRIABLE BY JURY.

Dated: October 20, 2023

        Respectfully submitted,

        */s/ Sarah Weitekamp*
        Sarah Weitekamp (OBA #34046)
        Equip for Equality
        1 West Old State Capitol Plaza, Suite #501
        Springfield, IL 62701
        Telephone: office 312-341-0022
        direct 217-993-9985

        Paul W. Mollica (IL Bar No. 6194415)
        Equip for Equality
        20 N Michigan #300
        Chicago, IL 60602

        ATTORNEYS FOR PLAINTIFF